Case No. 24-6011
Case No. 25-2064

---

IN THE UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

STEVE ROSE, as personal representative of Estate of Richard Rose,

Plaintiff-Appellant,

v.

STATE OF OREGON, et al.,

Defendants - Appellees,

---

## APPELLANT'S OPENING BRIEF

---

Appeal from the United States District Court
for the District of Oregon, Pendleton Division,
Case Nos. 2:22-cv-00923-HL and 2:24-cv-00912-HL
The Honorable Magistrate Judge Andrew Hallman

---

John Burgess, OSB No. 106498
johnburgess@civilrightsoregon.com
Carl Post, OSB No. 061058
carlpost@civilrightsoregon.com
Snyder, Post and Burgess
1000 SW Broadway, Ste 2400
Portland, OR 97205
Telephone: 503-241-3617
Attorneys for Plaintiff-Appellant

Denise Fjordbeck, OSB No. 822578
denise.fjordbeck@doj.oregon.gov
Oregon Department of Justice
1162 Court Street, NE
Salem, OR 97301
Attorney for Defendant-Respondent

September 2025

**Table of Contents**

INTRODUCTION ..................................................................................7

STATEMENT OF JURISDICTION ......................................................8

STATEMENT OF THE ISSUES .........................................................9

STATEMENT OF THE CASE ...........................................................10

   I.  *Rose I*.......................................................................................10

      A.  Factual Background ..........................................................10

      B.  Doe Defendants and Amendment ......................................12

      C.  Rule 4(m) Dismissal.........................................................12

      D.  Trial and Judgment...........................................................13

   II.  *Rose II* ..................................................................................13

      A.  Factual Background ..........................................................13

      B.  Procedural History ...........................................................14

SUMMARY OF ARGUMENT...........................................................15

ARGUMENT......................................................................................17

   I.  The District Court Erred in Dismissing the Individual Defendants in *Rose I* Under Rule 4(m). ......................................................17

      A.  Good cause existed because DOJ represented it would accept service, appeared in the case, and filed dispositive motions on behalf of the individual defendants.................................18

      B.  Even if good cause were lacking, equitable considerations required an extension. .................................................19

      C.  The Oregon DOJ's conduct confirmed actual notice and representation. .................................................................21

D.  Dismissal elevated form over substance and was an abuse of discretion................................................................23

II.  The District Court Erred in Dismissing *Rose II* as Time-Barred. ..........................................................................24

A.  Accrual of § 1983 claims is governed by the federal discovery rule, which postpones accrual until Plaintiff-Appellant knew or should have known the cause of his injuries...................24

B.  Equitable tolling applies because defendants controlled the information necessary to identify them...................................33

CONCLUSION.......................................................................37

2

# Table of Authorities

## Cases

*Allen v. Nw. Permanente, P.C.*,
2013 WL 865967 (D. Or. Jan. 2, 2013) .........................................................36

*Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*,
522 U.S. 192 (1997)......................................................................................27

*Bd. of Regents of Univ. of State of N.Y. v. Tomanio*,
446 U.S. 478 (1980)......................................................................................35

*Bibeau v. Pac. Nw. Research Found., Inc.*,
188 F.3d 1105 (9th Cir. 1999) ......................................... 27, 29, 31, 33, 34, 35

*Booth v. United States*,
914 F.3d 1199 (9th Cir. 2019) ......................................................................36

*Borzeka v. Heckler*,
739 F.2d 444 (9th Cir. 1984) .................................................................. 23, 26

*Bureau of Prisons v. Shareef*,
46 F. App'x 406 (9th Cir. 2002) ....................................................................38

*Bynum v. Trustees of Univ. of Pa.*,
115 F. Supp. 3d 577 (E.D. Pa. 2015) .............................................................30

*Clavette v. Sweeney*,
132 F. Supp. 2d 864 (D. Or. 2001) ..................................................... 30, 33, 34

*Credit Suisse Sec. (USA) LLC v. Simmonds*,
566 U.S. 221 (2012)......................................................................................36

*De Tie v. Orange Cty.*,
152 F.3d 1109 (9th Cir.1998) .......................................................................20

*Direct Mail Specialists, Inc. v. Eclat Comput. Techs., Inc.*,
840 F.2d 685 (9th Cir. 1988) .................................................................. 24, 25

*Dyniewicz v. United States*,

   742 F.2d 484 (9th Cir. 1984) ............................................. 30, 31, 32, 33, 34, 35

*Efaw v. Williams*,

   473 F.3d 1038 (9th Cir. 2007) ........................................................ 20, 21, 26

*Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*,

   375 F.3d 922 (9th Cir. 2004) ........................................................................24

*Gibson v. United States*,

   781 F.2d 1334 (9th Cir. 1986) ......................................... 30, 31, 32, 33, 34, 35

*Gillespie v. Civiletti*,

   629 F.2d 637 (9th Cir. 1980) ........................................................................29

*Gregg v. Haw. Dep't of Pub. Safety*,

   870 F.3d 883 (9th Cir. 2017) ........................................................................27

*Holland v. Florida*,

   560 U.S. 631 (2010) ............................................................................... 35, 39

*In re Roxford Foods, Inc.*,

   12 F.3d 875 (9th Cir. 1993) ..........................................................................24

*In re Sheehan*,

   253 F.3d 507 (9th Cir. 2001) ............................................................ 22, 25, 26

*Jones v. Blanas*,

   393 F.3d 918 (9th Cir. 2004) ........................................................................35

*Kobold v. Good Samaritan Reg'l Med. Ctr.*,

   832 F.3d 1024 (9th Cir. 2016) ......................................................................37

*Kwai Fun Wong v. Beebe*,

   732 F.3d 1030 (9th Cir. 2013) ......................................................................35

*Lemoge v. United States*,

   587 F.3d 1188 (9th Cir. 2009) .......................................................... 22, 25, 26

4

*Liuzzo v. United States*,

    485 F. Supp. 1274 (E.D. Mich. 1980)..................................................................32

*Mann v. Am. Airlines*,

    324 F.3d 1088 (9th Cir. 2003) ...................................................... 20, 21, 22, 26

Mills v. City of Covina,

    921 F.3d 1161 (9th Cir. 2019) ....................................................................27

*Monical v. Marion Cnty.*,

    No. 6:18-CV-103-YY, 2021 WL 228891 (D. Or. Jan. 22, 2021)....................36

*Nealey v. Transportacion Maritima Mexicana, S.A.*,

    662 F.2d 1275 (9th Cir. 1980) ....................................................................22

*Ofodrinwa v. Kizzar*,

    No. 3:24-CV-00463-HZ, 2024 WL 3510963 (D. Or. July 23, 2024)..............36

*Rawlings v. Ray*,

    312 U.S. 96 (1941)) ....................................................................................27

*Roe v. City of Portland*,

    2024 WL 3888705 (D. Or. Aug. 19, 2024)..................................................30

*Shasta View Irrigation Dist. v. Amoco Chems. Corp.*,

    329 Or. 151 (1999)....................................................................................36

*Smith v. Davis*,

    953 F.3d 582 (9th Cir. 2020) ....................................................................37

*Socop–Gonzalez v. I.N.S.,*

    272 F.3d 1176 (9th Cir. 2001) ....................................................................37

*Soto v. Sweetman*,

    882 F.3d 865 (9th Cir. 2018) ....................................................................37

*Stoll v. Runyon*,

    165 F.3d 1238 (9th Cir. 1999) ....................................................................38

*TwoRivers v. Lewis*,

   174 F.3d 987 (9th Cir. 1999) ..................................................................27

*United States v. Kubrick*,

   444 U.S. 111 (1979)...................................................... 27, 29, 31, 32, 34, 35

*Wakefield v. Thompson*,

   177 F.3d 1160 (9th Cir. 1999) ...............................................................29

Wallace v. Kato,

   549 U.S. 384 (2007)............................................................... 27, 28, 35

*Whale v. United States*,

   792 F.2d 951 (9th Cir. 1986) ..................................................................22

*Wilson v. Moore & Assocs., Inc.*,

   564 F.2d 366 (9th Cir. 1977) .................................................................24

**Statutes**

42 U.S.C. § 1983............................................................... 9, 10, 11, 16

**Rules**

Fed. R. Civ. P. 4(m)...................................... 1, 14, 16, 19, 20, 21, 22, 25, 26, 39

## INTRODUCTION

This consolidated appeal arises from the wrongful death of Richard Rose while incarcerated at Two Rivers Correctional Institution. Plaintiff-Appellant, Steven Rose, as personal representative of his son's estate, brought suit under 42 U.S.C. § 1983 alleging that Oregon Department of Corrections staff acted with deliberate indifference to Richard's serious medical needs, resulting in his preventable death.

Two distinct rulings form the basis of this appeal. In *Rose v. Or. Dep't of Corr., et al.*, Case No. 2:22-cv-00923-HL (hereafter "*Rose I*"), the district court dismissed eight individual defendants—initially pled as Doe defendants and later named after discovery—under Federal Rule of Civil Procedure 4(m). Plaintiff-Appellant had reasonably relied on the Oregon Department of Justice's representations that it would accept service on their behalf, and defense counsel had already appeared and litigated dispositive motions concerning their liability. Nonetheless, the court refused to extend time for service and dismissed them, narrowing the case to the remaining defendants. Following a jury trial, judgment was entered in favor of the remaining defendants.

In *Rose v. Pena, et al.* Case No. 2:24-cv-00912-HL (hereafter "*Rose II*"), Plaintiff-Appellant refiled his claims against the dismissed individual defendants. The district court dismissed that action with prejudice as barred by Oregon's two-year statute of limitations, despite the fact that Plaintiff-Appellant

7

did not learn—and could not have learned—the identities or roles of the Doe defendants until discovery in *Rose I*, well within two years of filing the second action.

These dismissals deprived Plaintiff-Appellant of a decision on the merits of his claims against the individuals most directly responsible for Richard's death. On appeal, Plaintiff-Appellant seeks reversal of both rulings: reinstatement of the claims against the dismissed defendants in *Rose I* and reversal of the dismissal in *Rose II* with instructions to permit the claims to proceed.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction over these actions pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff-Appellant asserted claims under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments. The district court also had supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367.

In *Rose I*, final judgment was entered on September 4, 2024, and Plaintiff-Appellant timely filed a notice of appeal on September 27, 2024. In *Rose II*, final judgment was entered on February 25, 2025, and Plaintiff-Appellant timely filed a notice of appeal on March 26, 2025. This Court has jurisdiction over both appeals under 28 U.S.C. § 1291.

This Court consolidated the appeals, Nos. 24-6011 and 25-2064.

8

## STATEMENT OF THE ISSUES

1. Whether the district court erred in *Rose I* by dismissing eight individual defendants under Fed. R. Civ. P. 4(m), where those defendants had been named as Doe defendants in the original complaint, were later identified and substituted, and had appeared through counsel and litigated dispositive motions.

2. Whether the district court erred in *Rose II* by dismissing Plaintiff-Appellant's § 1983 claims as time-barred, where Plaintiff-Appellant did not learn the identities and roles of the Doe defendants until discovery in *Rose I*, well within two years of filing the second action, and thus the statute of limitations should have been tolled under the discovery rule.

**The text of the applicable statutes are:**

**42 U.S.C. § 1983:**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted

9

unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**STATEMENT OF THE CASE**

I.     *Rose I*

   A.   **Factual Background**

On August 20, 2020, Richard, a twenty-four-year-old man incarcerated at Two Rivers Correctional Institution, suffered a medical emergency and ultimately died of cardiac arrest just after midnight. The circumstances of the staff's response are sharply disputed, but several facts are undisputed: paramedics did not arrive until 10:15 p.m., Rose was transported to a hospital at 10:45 p.m., and he died shortly after midnight on August 21, 2020. ER-53).

Plaintiff-Appellant's evidence showed that Rose fell ill around 9:00 p.m. when he began vomiting, making strange noises, and turning purple. His cellmate immediately pressed the emergency call button repeatedly, but no staff responded. Inmates across the unit began shouting "man down" and banging on their doors, but officers did not come for several minutes. (ER-109, 110, 135).

When correctional staff arrived, they failed to render medical aid. Officers dismissed inmates' pleas for help, accused Rose of faking, and told

others to stop shouting or risk being sent to segregation. Several officers stood by without attempting to check Rose's pulse or breathing. Nurses arrived without equipment, did not check Rose's vitals, and made no effort to resuscitate him. Instead, staff dragged his limp body from the cell onto the tier. One officer twisted Rose's arm while he was unresponsive, telling him to "stop resisting." (ER-115).

Rose remained without medical attention for more than thirty minutes. An ambulance was not called until 10:03 p.m., nearly an hour after he collapsed. Paramedics arrived at 10:15 p.m., transported him at 10:45 p.m., and he was pronounced dead at 12:01 a.m. (ER-55-58).

Plaintiff-Appellant supported these facts with multiple declarations and expert testimony. Dr. Kousik Krishnan, a cardiologist, opined that in cases of cardiac arrest a delay of even 20–40 minutes can be the difference between life and death, and that the standard of care required staff to call 911 immediately upon seeing Rose's condition. (ER-101-102). Three of the nurse defendants—Jemmett, Coleman, and Campos-Hernandez—testified in depositions that when they saw Rose's condition, they recognized it as an emergency and told security to call an ambulance. (ER-90-91, 94-95, 98). These accounts established that the officers and nurses personally observed Rose's distress, failed to act promptly, and contributed to the fatal delay.

11

### B.   Doe Defendants and Amendment

From the outset, Plaintiff-Appellant alleged that multiple unknown officers and nurses were directly responsible for Rose's death. The original June 28, 2022 complaint named ODOC, two identified staff, and six Doe defendants alleged to be the correctional officers and nurses involved in the events of August 20, 2020. (ER-145).

During discovery, Plaintiff-Appellant learned the identities of the Doe defendants through ODOC's disclosures and substituted them in an amended complaint filed February 23, 2024. The amended pleading added eight individuals by name—Defendants Pina, Christian, Irving, Trott, Carlson, Coleman, Campos-Hernandez, and Jemmett. (ER-151-161).

### C.   Rule 4(m) Dismissal

After the amended complaint, Defendants filed a renewed motion for summary judgment, expressly seeking dismissal of the claims against all defendants, including the newly named individuals. (ER-130-144). Plaintiff-Appellant understood this motion, consistent with the Oregon Department of Justice's past practice, to constitute an appearance on behalf of those defendants and obviate the need for formal service. DOJ counsel had represented to Plaintiff-Appellant's counsel that coverage determinations were being made and that waivers of service would be forthcoming. (ER-47-49, 44-46).

12

On May 10, 2024, the district court denied summary judgment, holding that Plaintiff-Appellant had presented sufficient evidence of deliberate indifference and negligence to proceed to trial. (ER-53).

Shortly thereafter, the district court issued an order to show cause why the eight newly named defendants had not been served. (ER-50). Plaintiff-Appellant responded, explaining reliance on DOJ's assurances, the filing of dispositive motions on behalf of the individuals, and the absence of prejudice. Plaintiff-Appellant requested additional time to serve if necessary and filed summonses. (ER-47-49, 44-46).

On June 6, 2024, the district court dismissed the eight defendants under Fed. R. Civ. P. 4(m). (ER-41-43).

### D.  Trial and Judgment

The case proceeded to trial against the remaining defendants. After a four-day trial, the jury returned a defense verdict. Final judgment was entered on September 4, 2024. (ER-14). Plaintiff-Appellant timely filed a notice of appeal on September 27, 2024. (ER-175).

## II.  *Rose II*

### A.  Factual Background

As described above, Richard's death on August 20, 2020, gave rise to claims under 42 U.S.C. § 1983 against the correctional staff and nurses who failed to respond to his obvious medical emergency. Plaintiff-Appellant

13

initially included these individuals as Doe defendants in the original complaint in *Rose I*, alleging that unknown correctional officers and nurses ignored repeated calls for help, delayed summoning an ambulance, and failed to provide life-saving medical aid. (ER-151).

Plaintiff-Appellant did not know the names or precise roles of these Doe defendants until after the filing of the lawsuit. Discovery responses in *Rose I* first revealed their identities and involvement in late 2022. Plaintiff-Appellant then filed an amended complaint on February 23, 2024, naming the Doe defendants as Defendants Pina, Christian, Irving, Trott, Carlson, Coleman, Campos-Hernandez, and Jemmett. (ER-151). These defendants were dismissed without prejudice on June 6, 2024, under Rule 4(m). (ER-41-43).

**B. Procedural History**

Shortly after the dismissal of the Doe defendants in *Rose I*, Plaintiff-Appellant refiled claims against them in *Rose II*. On June 7, 2024, Plaintiff-Appellant filed a complaint in the District of Oregon alleging the same § 1983 claims for deliberate indifference against the eight individual defendants originally pled as Does. (ER-190). Summonses were issued and waivers of service executed in July 2024. (ER-192).

Defendants moved to dismiss on statute of limitations grounds, arguing that the claims accrued on the date of Rose's death in August 2020 and were therefore untimely. (ER-36-39). Plaintiff-Appellant opposed dismissal,

14

explaining that under the federal discovery rule, a § 1983 claim accrues when the plaintiff knows or has reason to know of the injury and its cause. (ER-15-22). Plaintiff-Appellant argued that he could not reasonably have known the identities and roles of the individual defendants—the very correctional officers and nurses directly responsible for the delayed medical care—until discovery in *Rose I* revealed that information in November 2022, less than two years before filing *Rose II*. (ER-8-12).

On February 3, 2025, Magistrate Judge Hallman issued Findings and Recommendation, concluding that the claims were time-barred because under Ninth Circuit precedent a plaintiff's lack of knowledge of the individual tortfeasors' identities does not toll the statute of limitations. (ER-11-12). The district court adopted the recommendation in full on February 25, 2025, and entered judgment dismissing the case with prejudice. (ER-6-7).

Plaintiff-Appellant timely filed a notice of appeal on March 26, 2025. (ER-172).

## SUMMARY OF ARGUMENT

The district court erred in dismissing the individual defendants from *Rose I* and in holding that Plaintiff-Appellant's subsequent action, *Rose II*, was time-barred. Together, these rulings deprived Plaintiff-Appellant of any opportunity to litigate his claims against the very individuals whose conduct caused his decedent's death.

15

First, the dismissal of the individual defendants in *Rose I* was an abuse of discretion. Plaintiff-Appellant timely filed suit within the applicable limitations period, expressly naming Doe defendants to preserve claims against individuals whose identities were unknown at the time of filing. Defendants' counsel represented that waivers of service would be filed, and those same counsel later appeared and even filed a motion for summary judgment on behalf of the individual defendants. Under these circumstances, dismissing the individuals under Rule 4(m) elevated form over substance. The Ninth Circuit has long held that dismissal is improper where defendants had actual notice, no prejudice was shown, and the plaintiff would suffer severe prejudice from dismissal—particularly where the statute of limitations would bar refiling.

Second, the dismissal of *Rose II* as untimely was also error. Accrual of a § 1983 claim is governed by the federal discovery rule, which postpones accrual until a plaintiff knows, or reasonably should know, both of the injury and its cause. Here, while Plaintiff-Appellant knew of Richard Rose's death, he could not have known which correctional officers and medical staff failed to respond until ODOC's records and testimony were produced in litigation. The only witness who might have identified them—Richard himself—was deceased. Moreover, equitable tolling principles apply. Oregon law, which governs tolling, recognizes that limitations periods are suspended when extraordinary circumstances outside a litigant's control make timely filing

16

impossible. If solitary confinement may justify tolling, then death—which left the estate without access to the decedent's account and dependent on ODOC-controlled information—plainly qualifies.

The combined effect of the district court's rulings was to immunize the very wrongdoers whose conduct caused Rose's death, despite Plaintiff-Appellant's diligence. Neither Rule 4(m), accrual principles, nor equitable tolling justify extinguishing these claims under such circumstances. These doctrines exist precisely to ensure that meritorious claims are heard on the merits rather than defeated by procedural technicalities.

Accordingly, this Court should reverse the district court's judgments in both *Rose I* and *Rose II* and remand for adjudication of Plaintiff-Appellant's claims against the individual defendants on their merits.

## ARGUMENT

I. **The District Court Erred in Dismissing the Individual Defendants in *Rose I* Under Rule 4(m).**

Rule 4(m) requires a plaintiff to serve each defendant within 90 days after the complaint is filed. If the plaintiff shows good cause for the failure, the court *must* extend the time for service. Even if good cause is not shown, the rule gives courts discretion to extend the time "for an appropriate period." Fed. R. Civ. P. 4(m). In exercising that discretion, courts must consider whether defendants had actual notice, whether they would be prejudiced by delayed

17

service, and whether dismissal would effectively bar the plaintiff's claims. *See Mann v. Am. Airlines*, 324 F.3d 1088, 1091 (9th Cir. 2003) ("Relief may be justified, for example, if the applicable statute of limitations would bar the re-filed action.") (quoting Fed. R. Civ. P. 4, Advisory Committee Note to 1993 Amendments, Subdivision (m)); and citing *De Tie v. Orange Cty.*, 152 F.3d 1109, 1111 n. 5 (9th Cir.1998) (recognizing that an extension may be warranted if the statute of limitations has run)); *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007).

The district court dismissed the individually named defendants in *Rose I* for lack of service under Rule 4(m). ER-41-43). That dismissal was an abuse of discretion. Most importantly, the ruling was not a routine procedural decision—it was effectively dispositive. By dismissing those defendants, the court ensured that when Plaintiff-Appellant refiled, the claims would be barred by the statute of limitations. Where a Rule 4(m) dismissal functions as a dismissal with prejudice, heightened scrutiny is required, and denial of an extension is an abuse of discretion. *Mann*, 324 F.3d at 1091; *Efaw*, 473 F.3d at 1041.

### A. Good cause existed because DOJ represented it would accept service, appeared in the case, and filed dispositive motions on behalf of the individual defendants.

Plaintiff-Appellant demonstrated good cause for any service defect. The Oregon DOJ affirmatively represented that it would file waivers of service for

18

ODOC employees, consistent with its longstanding practice. Plaintiff-Appellant reasonably relied on those representations, as well as DOJ's subsequent conduct—appearing at depositions on behalf of the individual defendants and filing a motion for summary judgment seeking dismissal of the claims against them. (ER-44-46).

That conduct confirmed that the defendants were on notice, were represented by counsel, and were actively litigating the case. Under these circumstances, Plaintiff-Appellant had a justifiable excuse for not effecting formal service. Where a plaintiff shows actual notice, lack of prejudice to the defendant, severe prejudice to the plaintiff, and justifiable excuse, Rule 4(m) requires an extension of time. *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001)(citing *Boudette v. Barnette,* 923 F.2d 754, 756 (9th Cir.1991)). The district court erred in failing to apply this mandatory rule.

**B.   Even if good cause were lacking, equitable considerations required an extension.**

Rule 4(m) mandates that courts extend the time for service when good cause exists and permits extensions even absent good cause where equity requires. *Mann*, 324 F.3d at 1091. The Ninth Circuit has consistently reversed dismissals under Rule 4(m) where limitations consequences, actual notice, and lack of prejudice weighed against dismissal.

19

In *In re Sheehan*, 253 F.3d at 512, this Court identified the relevant considerations: whether the defendant had actual notice, whether dismissal would prejudice the plaintiff, and whether the defendant would be prejudiced by delay. In *Lemoge v. United States*, 587 F.3d 1188, 1198–99 (9th Cir. 2009), the Court found abuse of discretion where dismissal barred refiling, holding that excusable neglect and the absence of prejudice to the defendant required an extension. Earlier cases reached the same conclusion. *See Nealey v. Transportacion Maritima Mexicana, S.A.*, 662 F.2d 1275, 1280-81 (9th Cir. 1980) (in related context (Rule 41), dismissal improper where delay caused no prejudice and was not unreasonable); *Whale v. United States*, 792 F.2d 951, 953 (9th Cir. 1986) (limitations consequences a critical factor).

This Court has also articulated a four-factor test excusing dismissal even for defective service: dismissal is improper if (a) the party had actual notice, (b) the defendant suffered no prejudice, (c) there was a justifiable excuse, and (d) dismissal would severely prejudice the plaintiff. *Borzeka v. Heckler*, 739 F.2d 444, 447 (9th Cir. 1984).

All of those factors are satisfied here. The individual defendants had actual notice and were defended by DOJ. They suffered no prejudice because they were represented by the same counsel throughout. Plaintiff-Appellant had a justifiable excuse: he relied on DOJ's longstanding practice of filing waivers and understood from counsel that DOJ would appear for the newly named

20

defendants. And dismissal caused the ultimate prejudice: it barred the claims permanently.

## C. The Oregon DOJ's conduct confirmed actual notice and representation.

Dismissal was especially unwarranted because the Oregon DOJ actively represented the Doe defendants in *Rose I*. DOJ appeared in July 2022, accepted service on behalf of ODOC, and from that point forward represented the interests of the correctional staff involved in the incident. After Plaintiff-Appellant amended to name those staff members, DOJ conferred with counsel and indicated it was representing them as well. DOJ then defended them in depositions—where the same lawyer appeared on behalf of both ODOC and the later-named individuals—and filed a renewed motion for summary judgment seeking dismissal of claims against those defendants. (ER-130-143).

Filing and litigating a dispositive motion on behalf of a party is more than sufficient to constitute an "appearance" in federal court. The Ninth Circuit has held that even informal contacts may constitute an appearance where they demonstrate an intent to defend. *Wilson v. Moore & Assocs., Inc.*, 564 F.2d 366, 368 (9th Cir. 1977). Similarly, the Court has broadly construed "appearance" to include any actions that show an intent to litigate the case on the merits. *Direct Mail Specialists, Inc. v. Eclat Comput. Techs., Inc.*, 840 F.2d 685, 689 (9th Cir. 1988); *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d

21

922, 928 (9th Cir. 2004). Filing a summary judgment motion—one of the most substantive submissions in litigation—necessarily demonstrates an intent to defend and therefore constitutes an appearance under this Court's precedent. Indicating intent to file waivers of service is comparable to the types of informal actions referenced in *Direct Mail Specialists* and *Franchise Holding II*.

Other Ninth Circuit cases confirm that active participation in related proceedings or litigation is treated as an appearance. *See In re Roxford Foods, Inc.*, 12 F.3d 875, 881 (9th Cir. 1993) (participation in related case was an appearance requiring notice). DOJ's conduct here was more direct: it filed dispositive motions, conducted depositions, and defended the merits of the case.

By treating these defendants as though they had not been served[1] or appeared, the district court did not take into account the conduct of the defendants and their counsel. They were in the case. DOJ's participation was not inadvertent or peripheral; it was substantive, adversarial litigation that gave them every protection Rule 4 is designed to provide. Courts in this Circuit disfavor dismissals where the defendant has appeared, because the policy favors resolution on the merits over procedural defaults. *See Direct Mail Specialists*, 840 F.2d at 689.

---

[1] None of the defendants in either *Rose I* or *Rose II* have asserted they were not served or sought dismissal on grounds they were not served.

22

At minimum, DOJ's conduct was tantamount to an appearance. Treating these defendants as if they were absent parties and dismissing them under Rule 4(m) elevated form over substance and was an abuse of discretion.

## D. Dismissal elevated form over substance and was an abuse of discretion.

Rule 4(m) is intended to promote diligence in service, not to create a technical trap that extinguishes meritorious claims. Where defendants had actual notice, were represented by the same counsel, and actively participated in the litigation, dismissal elevates form over substance. *See Lemoge*, 587 F.3d at 1198–99; *Sheehan*, 253 F.3d at 512.

In the unique context of prisoner civil rights litigation, where plaintiffs cannot know the identities of responsible officers until discovery, rigid application of Rule 4(m) is especially unjust. By dismissing under Rule 4(m) without considering the dispositive limitations consequences, the district court imposed the harshest sanction possible and contravened controlling Ninth Circuit precedent. That was an abuse of discretion.

For these reasons, the district court erred in dismissing of the individual defendants in *Rose I*. The record shows that the Oregon DOJ appeared on their behalf, defended them in depositions, and filed dispositive motions seeking their dismissal. They had actual notice, suffered no prejudice, and Plaintiff-Appellant would suffer the ultimate prejudice if the dismissal were allowed to

stand. Under *Mann*, *Efaw*, *Sheehan*, *Lemoge*, and *Borzeka*, the district court's refusal to extend the time for service was an abuse of discretion. This Court should reverse the dismissal of the individual defendants in *Rose I* and remand so that the claims against them may proceed on the merits.

## II. The District Court Erred in Dismissing *Rose II* as Time-Barred.

The district court dismissed *Rose II* as untimely under Oregon's two-year statute of limitations for personal injury actions. (ER-8-12). That dismissal was error because Plaintiff-Appellant did not know, and could not reasonably have known, the identities and roles of the individual defendants—which is to say, the cause of the decedent's injuries—until discovery in *Rose I*. Under the federal discovery rule, equitable tolling, and relation-back principles, the claims in *Rose II* were timely.

### A. Accrual of § 1983 claims is governed by the federal discovery rule, which postpones accrual until Plaintiff-Appellant knew or should have known the cause of his injuries.

The accrual date of a § 1983 cause of action is a matter of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). As the Supreme Court explained, the "standard rule" is that accrual occurs when the plaintiff has a "complete and present cause of action," meaning "when the plaintiff can file suit and obtain relief." *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997); *Rawlings v. Ray*, 312 U.S. 96,

24

98 (1941)); see also *Mills v. City of Covina*, 921 F.3d 1161, 1166 (9th Cir. 2019).

The Ninth Circuit has further clarified that a claim accrues when the plaintiff knows or has reason to know of both the injury and its cause. *Gregg v. Haw. Dep't of Pub. Safety*, 870 F.3d 883, 885 (9th Cir. 2017) (citing *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012)(Under federal law "a claim accrues ... when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury."); *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)). The Supreme Court in *United States v. Kubrick*, 444 U.S. 111, 122–23 (1979), and this Court in *Bibeau v. Pac. Nw. Research Found., Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999), confirm that knowledge of the "causal connection" is required, not merely awareness of injury.

The district court treated accrual as beginning on the date of Richard's death because Plaintiff-Appellant was aware of the injury at that time. (ER-12). But this reasoning collapses "injury" into "cause." While Plaintiff-Appellant knew of Rose's death in August 2020, he did not and could not know the identities and precise roles of the officers and nurses who caused the fatal delay in care. Those facts were revealed only through discovery in *Rose I*, when ODOC's records and testimony disclosed which staff members responded to Rose's cell, what they did, and what they failed to do. Without that information,

25

Plaintiff-Appellant did not have a "complete and present cause of action" against those individuals.

The mere fact of Richard's death did not itself create a § 1983 claim. Death is only potentially an injury that is actionable if it is caused by wrongful conduct by state actors. The claim arises only when there is a basis to allege that specific officers or medical staff acted (or failed to act) with deliberate indifference in violation of the Eighth Amendment. Without knowledge of that wrongful conduct, the estate had no "complete and present cause of action." *Wallace v. Kato*, 549 U.S. at 388. Accrual therefore could not begin simply with the occurrence of death, but only when discovery revealed that constitutional violations by identifiable state actors caused the fatal outcome.

Critically, the only person who might have identified those staff members—Richard himself—was dead. The estate could not obtain his account of who responded or failed to act. That reality made discovery the sole means of learning the "cause" of the injury in the sense required by accrual law.

Plaintiff-Appellant acted diligently: he pled Doe defendants from the outset, pursued discovery, substituted names after they were discovered, and refiled claims within two years of that discovery. (ER-152-153, 37). The Ninth Circuit has long recognized that Doe pleading, while generally disfavored, is permissible in § 1983 cases where a plaintiff cannot reasonably identify defendants at filing. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163-64 (9th

26

Cir. 1999). In *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), the Court held that "where the identity of alleged defendants will not be known prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities." That is precisely what occurred here. *Id.*

The Supreme Court's reasoning in *Kubrick* and this Court's decision in *Bibeau* reinforce that accrual requires knowledge of both injury and cause. The cause of Rose's death—the deliberate indifference of specific ODOC staff— could not possibly have been known at the time of death. ODOC controlled the identities, assignments, and video evidence, none of which would have been disclosed absent litigation and protective orders.

Other courts have recognized that accrual is delayed until plaintiffs, exercising reasonable diligence, can discover the identities of those responsible. For example, in *Bynum v. Trustees of Univ. of Pa.*, 115 F. Supp. 3d 577, 587–89 (E.D. Pa. 2015), accrual was tolled where the plaintiff sued John Does and learned names only through discovery in the first action. The same reasoning applies here.

Thus, accrual should be understood to have occurred only when Plaintiff-Appellant discovered, through disclosures in *Rose I*, the identities of the officers and nurses whose deliberate indifference allegedly caused Rose's death. To hold otherwise would effectively bar many estates from vindicating

27

constitutional claims where the decedent cannot speak and the state exclusively controls the causal information.

**1. The district court's reliance on *Dyniewicz*, *Gibson*, and their progeny is misplaced.**

The district court relied on *Dyniewicz v. United States*, 742 F.2d 484 (9th Cir. 1984), *Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986), *Clavette v. Sweeney*, 132 F. Supp. 2d 864 (D. Or. 2001), and *Roe v. City of Portland*, 2024 WL 3888705 (D. Or. Aug. 19, 2024). (ER-11). Those cases, however, do not control in this context.

Those cases hold that a plaintiff need not know the precise identity of a tortfeasor when the cause of injury is otherwise obvious. But unlike in *Dyniewicz* (flooding cause apparent) or *Gibson* (injury from medical treatment evident), the cause here was not discernible without discovery revealing which officers and nurses were involved and that they failed to act, thereby creating a causal connection between the Defendants conduct and the injury. Knowledge that Rose died in custody did not equate to knowledge of who caused his death for purposes of § 1983 accrual.

Moreover, both *Dyniewicz* and *Gibson* were Federal Tort Claims Act cases, in which the defendant is always the United States. The question in those cases was whether the plaintiffs knew that the tortfeasor was a federal employee—not whether they knew the identity of the individual wrongdoer. By

28

contrast, in § 1983 litigation, identification of the individual state actor is itself an essential component of causation because Plaintiff's § 1983 claims could not be brought against the State of Oregon or the Oregon Department of Corrections.

The district court read *Dyniewicz* and *Gibson* as establishing that accrual begins whenever a plaintiff knows of an injury, regardless of whether the responsible actors are known. But those cases did not go nearly so far. Both arose under the FTCA, where the defendant is always the United States, and the only question was whether the plaintiffs understood that a federal employee was involved. Neither decision suggested that accrual begins before a plaintiff can identify the actual wrongdoers whose conduct caused the harm. To the extent *Rose II* extended *Dyniewicz* and *Gibson* to stand for that broader proposition, it was error. Properly read, those cases do not undermine the principle recognized in *Kubrick*, 444 U.S. at 122–23, and reaffirmed in *Bibeau*, 188 F.3d at 1108: a claim accrues only when the plaintiff knows both that he has been injured and "who has inflicted the injury."

Even *Dyniewicz* itself recognized that the discovery rule functions differently in cases involving hidden causes or government concealment. The court explained that while in "ordinary torts" accrual begins when the immediate physical cause of the injury is apparent, other circumstances—such as where a government agent's involvement is concealed—justify postponing

29

accrual until the plaintiff has reason to know who was responsible. 742 F.2d at 486–87 (discussing *Liuzzo v. United States*, 485 F. Supp. 1274 (E.D. Mich. 1980)). Richard's death was not an "ordinary tort" where the cause was immediately obvious; the injury here resulted from omissions and deliberate indifference by correctional staff whose identities were uniquely within the State's control. Just as in *Liuzzo*, the plaintiff could not reasonably know "what caused the injury" without first uncovering the role of government actors who withheld that information.

The district court's reliance on *Gibson*, was also misplaced. *Gibson* framed its analysis as rejecting an extension of *Kubrick* to require knowledge of negligence, but it did not displace the core rule that accrual requires knowledge of the cause of the injury. In fact, *Gibson* expressly conceded that under *Kubrick* a claim does not accrue until the plaintiff discovers "both the existence of his injury and its cause." *Id.* at 1344. The decision then held that in the circumstances of that case—an arson fire—the cause was immediately apparent: the injury was destruction of property and the cause was fire. *Gibson* relied on *Cline v. Brusett*, 661 F.2d 108 (9th Cir. 1981), and *Davis v. United States*, 642 F.2d 328 (9th Cir. 1981), both pre-*Kubrick* decisions that did not address the Supreme Court's clarification that knowledge of "who has inflicted the injury" is a critical fact for accrual. *See Kubrick*, 444 U.S. at 122; *Bibeau*, 188 F.3d at 1108. Thus, even on its own terms, *Gibson* recognized that knowing

30

the cause of the injury is essential; it simply equated "cause" with "fire." That reasoning does not extend to a custodial death where the "cause" is the deliberate indifference of particular state actors whose identities are concealed and undiscoverable absent litigation. Extending *Gibson* to bar claims in such circumstances, as the district court did here, misapplies the case beyond its limited context.

The district court also cited *Clavette*. That decision is neither binding nor persuasive here. Although *Clavette* was a § 1983 case, its reasoning rested almost entirely on FTCA precedents such as *Dyniewicz* and *Gibson*. *Id.* at 874–75. The court held that a plaintiff's claim accrued on the date of his arrest because he knew he had been injured by Portland police officers, even if he did not yet know the identity of Reserve Officer Morgan. *Id.* at 875. In those circumstances—where the plaintiff already knew the class of wrongdoers and the nature of their conduct—the court concluded that ignorance of one officer's name did not delay accrual.

That reasoning does not apply here. Richard was deceased, and his estate did not know which ODOC officers or medical staff responded to his medical crisis or failed to act. The very "cause" of the injury in the legally relevant sense—the deliberate indifference of specific state actors—could not be ascertained until discovery in *Rose I* revealed it. Unlike the plaintiff in *Clavette*,

31

Plaintiff-Appellant did not know at the outset which category of state actors bore responsibility.

Moreover, *Clavette* discounted the Supreme Court's teaching in *United States v. Kubrick*, 444 U.S. at 122–23, that accrual requires knowledge of both the injury and its cause, and it dismissed this Court's later holding in *Bibeau*, 188 F.3d at 1108, that accrual requires knowing "who has inflicted the injury." Treating that principle as "dictum," *Clavette* simply applied *Dyniewicz* and *Gibson* without analysis. *Id.* at 875.

For those reasons, *Clavette* is not controlling and does not undermine Plaintiff-Appellant's position. It addressed a plaintiff who already knew police officers were the cause of his injury and merely lacked the name of one officer. This case is materially different: here, the estate could not know who failed to act without first obtaining information in discovery.

Thus, unlike the FTCA plaintiffs in *Dyniewicz* and *Gibson*, Plaintiff-Appellant could not know the "cause" of his son's death without knowing which individuals failed to act in the face of a medical crisis. Here, the "cause" was not a natural or mechanical process, such as a flood or an accident, but the deliberate indifference of particular state employees. Until those identities were disclosed through discovery, Plaintiff-Appellant did not know the cause of the injury in the sense required by *Wallace*, *Kubrick*, and *Bibeau*.

32

**B. Equitable tolling applies because defendants controlled the information necessary to identify them.**

Equitable tolling is appropriate where a plaintiff has pursued his rights diligently but extraordinary circumstances beyond his control prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (en banc). The Ninth Circuit has emphasized that the inquiry is flexible and equitable, focusing on whether external obstacles—not a plaintiff's lack of diligence—made timely filing impossible. *See id.* at 1051–52.

For § 1983 actions, federal courts borrow the forum state's statute of limitations as well as its rules regarding tolling. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 484 (1980). Accordingly, Oregon law governs whether equitable tolling is available in this case.

Although Oregon courts have not articulated a comprehensive doctrine of equitable tolling in § 1983 cases, both the Oregon Supreme Court and the Oregon Court of Appeals have recognized that "various circumstances can toll [a statute of limitations'] expiration." *Shasta View Irrigation Dist. v. Amoco Chems. Corp.*, 329 Or. 151, 162 (1999); *Cannon v. Or. Dep't of Justice*, 288 Or. App. 793, 798 (2017). District courts applying Oregon law have consistently presumed that equitable tolling is available at least in some circumstances. *See*

33

*Monical v. Marion Cnty.*, No. 6:18-CV-103-YY, 2021 WL 228891, at *4 (D. Or. Jan. 22, 2021) ("the Oregon Supreme Court likely would apply equitable tolling" and adopt the general federal standard); *Allen v. Nw. Permanente, P.C.*, 2013 WL 865967, at *6 (D. Or. Jan. 2, 2013) ("[i]n Oregon, equitable tolling is available when circumstances outside the control of the affected party make it impossible to comply with a statute of limitations"); *see also Ofodrinwa v. Kizzar*, No. 3:24-CV-00463-HZ, 2024 WL 3510963, at *4 (D. Or. July 23, 2024).

Under that general test, equitable tolling applies where a litigant shows (1) that he or she has been pursuing rights diligently, and (2) that some extraordinary circumstance stood in the way and prevented timely filing. *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012); *Booth v. United States*, 914 F.3d 1199, 1207 (9th Cir. 2019); *Monical*, 2021 WL 228891, at *4. Oregon courts "use equitable tolling sparingly," but have acknowledged its availability when circumstances outside a party's control render compliance impossible. *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1048 (9th Cir. 2016).

This case presents precisely the type of extraordinary circumstances that warrant tolling. Richard's death in prison meant that the only person who could have identified the correctional staff involved in his final hours was unavailable. His estate had no access to prison rosters, logs, or video footage,

34

all of which were solely in the custody of ODOC. Unlike a living plaintiff who can name his assailants, the estate was entirely dependent on discovery to identify the individual actors. That dependence was not the product of neglect but of structural barriers inherent in prison litigation.

The Ninth Circuit has recognized that equitable tolling applies when vital information necessary to bring suit is beyond the plaintiff's reach. *See Socop–Gonzalez v. I.N.S.,* 272 F.3d 1176, 1193 (9th Cir. 2001) (en banc) , *overruled on other grounds by Smith v. Davis*, 953 F.3d 582 (9th Cir. 2020) (en banc) (tolling available when "extraordinary circumstances beyond a party's control" prevent timely action).

Courts applying this principle have treated lack of access to critical information as an extraordinary circumstance where the plaintiff otherwise acted diligently. *See, e.g., Soto v. Sweetman*, 882 F.3d 865, 875 (9th Cir. 2018) (delays attributable to prison grievance process may toll limitations period). The estate here filed promptly against Doe defendants, diligently pursued discovery in *Rose I*, and substituted real names as soon as ODOC disclosures permitted. That is the very definition of diligence.

In *Bureau of Prisons v. Shareef*, 46 F. App'x 406, 407 (9th Cir. 2002), the Ninth Circuit recognized that extraordinary prison conditions—such as solitary confinement—may warrant equitable tolling if they make it impossible for a prisoner to file on time. If solitary confinement, which merely restricts a

35

prisoner's ability to act, qualifies as such an extraordinary circumstance, then death must a fortiori meet that standard. Richard's death rendered him entirely incapable of pursuing his own claims or identifying the officials whose deliberate indifference caused his fatal injury. The estate could not interview him or rely on his account to establish who failed to respond to his medical crisis. This absolute bar on access to critical information is precisely the kind of extraordinary circumstance that makes equitable tolling not only appropriate but necessary to preserve the ability to vindicate constitutional rights.

*Stoll v. Runyon*, 165 F.3d 1238 (9th Cir. 1999), illustrates how extraordinary barriers outside a litigant's control can justify equitable tolling. There, the court tolled the statute where severe psychological trauma prevented the plaintiff from asserting her rights, even though she had counsel. *Id.* at 1242–43. The animating principle in Stoll applies here: equity requires tolling when external, extraordinary barriers—whether psychological incapacity or the death of the only percipient witness—render it impossible for a plaintiff to meet statutory deadlines.

To hold otherwise would impose an impossible burden on estates in prisoner death cases, effectively insulating correctional staff from liability whenever a prisoner dies without independently leaving behind the names of those responsible. That result is inconsistent with the equitable principles

36

underlying tolling and the strong presumption favoring resolution of claims on their merits. *See Holland*, 560 U.S. at 650.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant respectfully requests that this Court:

1. In *Rose I*: reverse the district court's dismissal of the individual defendants under Rule 4(m), and remand with instructions that those claims proceed on the merits; and

2. In *Rose II*: reverse the dismissal of Plaintiff-Appellant's claims as untimely, hold that the claims were timely under the discovery rule, equitable tolling, and relation-back principles, and remand for further proceedings on the merits.

DATE: September 22, 2025

SIGNATURE: /s/ John Burgess
John Burgess, OSB No. 106498
johnburgess@civilrightsoregon.com
Telephone: (503) 241-3617
Attorney for Petitioner-Appellant

37

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-6011; 25-2064

I am the attorney or self-represented party.

**This brief contains** 6,769 **words, including** 0 **words** manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____ .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ John Burgess   **Date** 09/24/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*